**Fidel FLORES, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–15–00754–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed November 29, 2016

Discretionary Review Refused March 8, 2017

Heather Hudson, Houston, TX, for State.

Jonathan Landers, Houston, TX, for Appellant.

Panel consists of Justices Boyce, Christopher, and Jamison.

## OPINION

William J. Boyce, Justice

A jury convicted appellant Fidel Flores of aggravated sexual assault of a child under the age of six, and the trial court sentenced him to 45 years' confinement. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B), (a)(2)(B), (f)(1) (Vernon Supp. 2016). In 16 issues, appellant asserts two general sources of alleged error: (1) the jury charge allowed a non-unanimous verdict; and (2) the prosecution was permitted to introduce inadmissible evidence that directly commented on the credibility and truthfulness of the complainant or that was hearsay. We affirm.

### BACKGROUND

Appellant is complainant's uncle; appellant's brother is complainant's father. Appellant lived with complainant, complainant's mother, and complainant's father in their one-bedroom apartment during the time frame relevant to the allegations in this case.

Complainant's mother began working three days a week beginning in 2011. On the days she worked, complainant's mother left appellant as the sole caretaker of complainant. There were no problems initially, but beginning in March 2012 complainant started complaining of rectal pain and began exhibiting anger and aggression towards appellant.

On May 29, 2012, complainant—who was four years old at the time—told his mother that he did not want to stay with appellant during the day. When asked why, complainant replied that appellant would put a "stick" in his "culito"—the term complainant used to refer to his anus.

Complainant's mother told his father about complainant's outcry but complainant's father did not believe that appellant had sexually assaulted complainant.[1] Complainant's father refused to evict appellant from the apartment. Complainant's mother left complainant with appellant the next day because she did not have anybody else to watch him, but she promptly made alternate childcare arrangements for complainant.

---

1. Complainant's mother contends she did not report the first outcry to authorities for fear she would be deported.

Appellant picked complainant up from school one day near the end of September 2012 because the person who would normally pick complainant up was unavailable. The next morning complainant told his mother that appellant had sexually assaulted him again the previous afternoon.

Complainant's mother took complainant to his pediatrician on October 2, 2012. Complainant's mother told the pediatrician that complainant had been complaining of rectal pain for three months. The pediatrician observed that complainant had a small tear and an area of thinning in the anus. The pediatrician believed the rectal pain was a result of constipation and prescribed a stool softener. Complainant's demeanor was normal and neither complainant nor complainant's mother mentioned sexual abuse at that time.

Complainant's mother took complainant to the pediatrician again on October 23, 2012, because of continuing rectal pain. During that appointment, complainant told the pediatrician that appellant had "put a stick in his bottom several times." The pediatrician reported the abuse to police and to Child Protective Services.

Appellant was charged with a single count of aggravated sexual assault of a child. The jury found appellant guilty and the trial court assessed punishment at 45 years' imprisonment. Appellant timely appealed.

### ANALYSIS

## I. Jury Charge Error

In his first two issues, appellant contends that (1) the jury charge erroneously allowed for the possibility of a non-unanimous verdict; and (2) the error should be reviewed pursuant to the constitutional harm standard under Texas Rule of Appellate Procedure 44.2(a) despite appellant's failure to object to the jury charge.

### A. Jury Unanimity

Under Texas law, jury unanimity is required in all criminal cases. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). A jury must reach a unanimous verdict about a specific felony that the defendant committed, meaning the jury must agree upon "a single and discrete incident that would constitute the commission of the offense alleged." *See Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). While jury unanimity generally is not required on the alternate modes or means of commission, the jurors must all agree "that the defendant committed the same, single, specific criminal act." *See Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005).

A non-unanimous verdict can occur when the State charges one offense and presents evidence that the defendant committed that offense on multiple separate occasions. *Cosio*, 353 S.W.3d at 772. In this instance, in order to ensure unanimity the judge's charge would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented. *Id.*

A defendant may choose to require the State to elect a specific criminal act that it relies upon for conviction. *See id.* at 775. Even if the defendant does not require an election, "guaranteeing unanimity is ultimately the responsibility of the trial judge," and "[t]he trial judge is therefore obligated to submit a charge that does not allow for the possibility of a non-unanimous verdict." *Id.* at 776.

Appellant was charged by indictment with the offense of aggravated sexual assault of a child under the age of six, alleged to have been committed on or

about June 1, 2012. The jury charge in this case identified four alternative means by which the State could prove commission of the offense:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of June, 2012, in Harris County, Texas, the defendant, Fidel Flores, did then and there unlawfully, intentionally or knowingly cause the penetration of the anus of [complainant], a child younger than six years of age, with the sexual organ of the defendant; or

If you find from the evidence beyond a reasonable doubt that on or about the 1st day of June, 2012, in Harris County, Texas, the defendant, Fidel Flores, did then and there unlawfully, intentionally or knowingly cause the penetration of the anus of [complainant], a child younger than six years of age, with an unknown object; or

If you find from the evidence beyond a reasonable doubt that on or about the 1st day of June, 2012, in Harris County, Texas, the defendant, Fidel Flores, did then and there unlawfully, intentionally or knowingly cause the penetration of the anus of [complainant], a child younger than six years of age, with the finger of the defendant, then you will find the defendant guilty of aggravated sexual assault of a child, as charged in the indictment.

If you find from the evidence beyond a reasonable doubt that on or about the 1st day of June, 2012, in Harris County, Texas, the defendant, Fidel Flores, did then and there unlawfully, intentionally or knowingly cause the penetration of the anus of [complainant], a child younger than six years of age, with a stick, then you will find the defendant guilty of aggravated sexual assault of a child, as charged in the indictment.

Appellant contends that the State presented evidence of two distinct sexual assaults of complainant. The State responds that it presented evidence of a single sexual assault that occurred around June 1, 2012. The State concedes that "[t]here was testimony at trial that [complainant] made a second outcry of abuse, however, the nature of the outcry is not apparent from the record." We agree with appellant that evidence of two distinct sexual assaults was presented.

During trial, the State presented evidence from several witnesses that complainant was sexually abused on at least two occasions: (1) when complainant made his initial outcry to his mother at the end of May 2012 and she arranged for alternate childcare; and (2) when appellant picked complainant up from school and watched him one afternoon in late September 2012. Because the State does not dispute that evidence was presented regarding the first assault, we discuss only the evidence concerning the second incident.

Complainant's mother, through a translator, testified as follows about the September assault:

[THE STATE:] And so, what had happened that caused the defendant to have to watch the victim?

[COMPLAINANT'S MOTHER:] Well, I assumed that my sister-in-law was going to pick him up. But something came up for her that she had to do. And she told me I can't pick up the child for you. So, I called my husband and I asked him to go get the child. I told him you can drive over and get him. And I said or come get me. And he said no. My brother's over there. He can pick him up.

We began to argue. And I told him, you know what the child said and I can't allow him to pick him up. And he said there's no other option. He's going to go pick him up. And that's how it went.

[THE STATE:] Did you see [complainant] that afternoon or that evening after [appellant] watched him?

[COMPLAINANT'S MOTHER:] Yes, of course. I arrived home that afternoon.

[THE STATE:] How was [complainant] acting?

[COMPLAINANT'S MOTHER:] He was angry. I felt badly, very badly. The next day in the morning, the child woke up and he said mom, you lied to me.

* * *

[THE STATE:] Without going into what [complainant] said, did he make another outcry of sexual abuse?

* * *

[COMPLAINANT'S MOTHER:] He again repeated the same.

[THE STATE:] What do you mean by that?

[COMPLAINANT'S MOTHER:] The same words that the child said to me in the beginning about his uncle.

[THE STATE:] So, he did make an outcry of sexual abuse about his uncle?

[COMPLAINANT'S MOTHER:] That's what he told me.

[THE STATE:] Okay. And based on your understanding of that conversation, was he saying—was he referring back to the abuse back in the summer or was he saying that happened the day before?

[COMPLAINANT'S MOTHER:] He was saying something about the day before.

[THE STATE:] And so, what did you feel knowing that that had happened again?

[COMPLAINANT'S MOTHER:] Very badly.

Complainant's pediatrician, reviewing complainant's medical records, testified that complainant "reports that in October sexual assault involving rectal penetration with a stick and touching of the genitalia by his uncle."

A police officer who interviewed complainant in the pediatrician's office testified that complainant told him the incident happened "more than once" and that the last incident had occurred close in time to complainant's statement in the pediatrician's office in late October 2012.

Finally, although not evidence of the second assault, the State reinforced to the jury during closing argument that more than one offense occurred:

And so, [complainant's mother] did what any good mother would do [after complainant's first outcry]. She tried to minimize that contact, but she couldn't because he was living in the house. And you know he had continued exposure to that man. And you know that on that one day that she will always regret for the rest of her life, she left him in the care of that man one more time. And he did it all over again. And she told you through her tears how [complainant] reacted to that. How betrayed and hurt he was by the fact that she knew this was going to happen again and let it happen anyway.

The State further argued that complainant's medical symptoms were "consistent and contemporaneous with a child saying he is being anally raped over and over again."

From the evidence above, the jury could have concluded that more than one incident of sexual abuse occurred. Although the jury charge asked whether appellant committed the offense on or about June 1, 2012, the charge also stated:

You are further instructed that the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon

proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations. There is no limitation period applicable to the offense of aggravated sexual assault of a child.

The State reinforced that the offense date did not matter in closing argument just before the jury went into deliberations:

> The other thing is the date. I didn't cover this in voir dire because it's kind of self-explanatory. But we're not bound by that June 1st, 2012 date. What that basically means is that's around the time of this outcry. I just have to prove it happened within the statute of limitations. And that doesn't exist in a case like this. So, you can kind of just exclude that. And I don't think anyone's really disagreeing as to the date on either side.

The charge also mentioned a unanimity requirement only once:

> After you retire to the jury room, you should select one of your members as your Foreperson. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreperson.

That unanimity instruction did not cure the error in the charge because it only required the jury to unanimously agree on the verdict—not on a specific offense committed. *See Ngo*, 175 S.W.3d at 745 (where "the word 'unanimously' appeared only in the 'boilerplate' section of the jury charge dealing with selection of the jury foreman," "the jury could well have believed that they need only be unanimous about their 'verdict' of guilty or not guilty . . .").

We conclude that the jury charge erroneously permitted a non-unanimous verdict based on the evidence presented at trial. The trial court failed to instruct the jury in the jury charge that it needed to unanimously base its verdict on a single offense among those presented. Accordingly, the jury charge was erroneous because members of the jury may have relied on separate incidents of criminal conduct committed by appellant to find him guilty of the offense of aggravated sexual assault of a child. *See, e.g., Cosio*, 353 S.W.3d at 769 (holding that jury charge permitted non-unanimous verdicts where there were several instances of sexual criminal conduct that could have satisfied the charged offenses and the trial court failed to instruct the jury that it must be unanimous about which instance of criminal conduct satisfied each charge).

Having concluded that the jury charge erroneously allowed a non-unanimous verdict, we next must determine the proper harm analysis to apply and whether appellant was harmed by the error.

**B. Analysis Under the Egregious Harm Standard**

■ When a jury charge allows for a non-unanimous verdict, there are "two legally significant components for purposes of our analysis—jury charge error and a state constitutional and statutory unanimity violation." *Id.* at 776. Appellant concedes that he did not require the State to elect the specific criminal acts that it intended to rely upon for conviction and that he did not object to the jury charge. Regardless, appellant contends that the constitutional component of his unanimity error issue cannot be forfeited by a failure to object at trial and should be reviewed for harm pursuant to the constitutional harm standard under Texas Rule of Appellate Procedure 44.2(a).

The Court of Criminal Appeals has held that "the constitutional component is subject to the constitutional harm standard under Texas Rule of Appellate Procedure

44.2(a) when it was properly preserved by a timely and specific objection at trial." *Id.* Failure to object to the unanimity error in the jury charge forfeits the constitutional unanimity component of the complaint. *See id.*

■ Appellant appears to contend that the Court of Criminal Appeals in *Cosio* incorrectly presumed that a timely and specific objection is required to preserve the constitutional component, and that the court's other precedent suggests that the constitutional unanimity component is "waivable only" and therefore preserved for review notwithstanding the lack of objection. But the court's holding in *Cosio* is clear: when no objection is made to the erroneous charge, the constitutional unanimity component of the complaint is forfeited. *See id.* This court, being bound to follow precedent from the Court of Criminal Appeals, lacks the authority to reexamine and overrule the precedent set by the high court in *Cosio. See Gardner v. State*, 478 S.W.3d 142, 147 (Tex. App.–Houston [14th Dist.] 2015, pet. ref'd). Accordingly, appellant's second issue is overruled.

■ Our analysis does not end there because the other component of appellant's complaint, "charge error[,] is never forfeitable by a defendant's failure to object at trial." *See Cosio*, 353 S.W.3d at 776. Whether an objection was made to the charge only determines the type of harm analysis we apply. *Id.* When no objection was made to the jury charge—as was the case here—reversal is proper only if the error caused actual, egregious harm to the appellant. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). For error to be egregious, it must have affected the very basis of the case, deprived the accused of a valuable right, or vitally affected a defensive theory. *Id.*; *Cosio*, 353 S.W.3d at 777.

■ To determine whether error caused egregious harm, we look to the particular facts of the case and consider: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Arrington*, 451 S.W.3d at 840; *Cosio*, 353 S.W.3d at 777.

### 1. Jury charge

■ The jury charge in this case permitted a non-unanimous verdict. Evidence of two separate instances of abuse was presented, and the charge did not require the jury to agree unanimously on which of the two instances the verdict was based.

■ Nothing in the charge ameliorated the error. The only reference that the jury need be unanimous stated that once the jury had unanimously agreed upon a verdict, the jury foreperson would certify the verdict. Generic statements regarding unanimity, like the one contained in the jury charge here, are insufficient to prevent a non-unanimous verdict. *See Cosio*, 353 S.W.3d at 773–74 ("Although the instruction's 'boilerplate' section informed the jury that it must be unanimous, the jury could have understood it to mean that they had to be unanimous about the offense in general, not a particular incident comprising the offense."); *Ngo*, 175 S.W.3d at 752 (in jury charge involving unanimity language nearly identical to the language in this case, the error was "compounded by the one misleading statement concerning unanimity that was set out in the jury charge").

This factor weighs in favor of a finding of egregious harm. *See Arrington*, 451 S.W.3d at 841.

## 2. State of the evidence

Under this prong, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm. *Id.* We must determine "the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of [this] particular case." *See Jourdan*, 428 S.W.3d at 98.

There was little medical evidence that complainant was sexually assaulted in or around May 2012, and no DNA evidence linking appellant to the assault. The majority of the evidence consisted of testimony from complainant and those who heard him describe the incident.

Complainant testified that he was laying on his bed on his stomach playing a handheld video game one afternoon while appellant was watching him. Complainant said that appellant pulled complainant's pants and underwear down, and that complainant then felt "something hard" that "felt like a stick" in his "culito," or anus. Complainant testified that whatever appellant was putting in his anus hurt, and that appellant inserted it more than once. Complainant said that he never saw the object because when he looked back at appellant, appellant hid the object by dropping it behind the bed. But complainant testified that the sound it made when it fell made complainant think it was a stick. Complainant testified that when he turned around, appellant was sweating and breathing fast. Complainant testified that appellant assaulted him only on one occasion.

The evidence supporting a second assault was limited and came in the form of testimony from witnesses other than complainant. Complainant's mother testified that complainant made outcries to her on two separate occasions regarding two separate incidents. Complainant's pediatrician, reviewing complainant's medical records, testified that complainant "reports that in October sexual assault involving rectal penetration with a stick and touching of the genitalia by his uncle." Finally, a police officer who interviewed complainant in the pediatrician's office testified that complainant told him the incident happened "more than once" and that the officer believed the incident had occurred close in time to his interview of complainant in the pediatrician's office in late October 2012. The State's other evidence was neutral as to which incident occurred, if more than one. The police officer who interviewed complainant testified that complainant told him a crime had occurred; complainant was certain as to the details of the crime; and complainant named a single perpetrator. A forensic interviewer at the Children's Assessment Center who interviewed complainant testified that complainant told her about sexual abuse, and was certain as to the details of the abuse and as to the identity of the person who assaulted him.

Although complainant's testimony and his statements to others were fairly consistent, there was contrary evidence. When complainant's mother first took complainant to the pediatrician, she told the pediatrician that complainant had been complaining of rectal pain for three months. Complainant's demeanor was normal and neither complainant nor complainant's mother mentioned sexual abuse at that time—even though the appointment was just days after the second alleged assault. The pediatrician believed that the minor injuries to complainant's anus were the result of constipation.

When complainant's mother took complainant to the pediatrician a second time, she again made no mention to the pediatrician of sexual abuse. It was not until the pediatrician asked complainant why he was there that complainant told the pediatri-

cian that appellant had "put a stick in his bottom several times."

Complainant's father testified that complainant told him complainant was making up the abuse as part of a "trick" complainant's mother had planned to move appellant out of their apartment. Complainant's father testified that complainant never made an outcry of sexual assault to him. Complainant's father further testified that complainant "never tells the truth."

Complainant's psychotherapist testified that she asked complainant during one session whether he had ever been touched on his penis or buttocks by anyone other than his mother or father, and complainant said that he had not.

Finally, appellant testified that he never sexually assaulted complainant. Appellant contended complainant was not credible and that complainant's mother had persuaded complainant to lie about being sexually abused in order to remove appellant from the apartment.

From the evidence the jury heard, it is very unlikely that any member of the jury believed that the second incident took place but that the first did not. Complainant's description of the first incident was detailed and specific; the relatively scant evidence concerning the second incident was essentially that the same type of assault occurred again. No details were provided regarding the second incident. Moreover, although the contrary evidence outlined above tended to call into question whether sexual abuse had occurred at all, that evidence did not present any basis for a juror to have determined that the first incident did not occur but that the second did. Accordingly, we conclude that the state of the evidence weighs against a finding of egregious harm.

### 3. Parties' arguments

Under this factor, we determine whether any statements made by the State, appellant, or the trial court during the trial exacerbated or ameliorated error in the charge. *Arrington*, 451 S.W.3d at 844.

The State told the jury in closing argument that it need not reach unanimity regarding the manner of commission of the assault. The State also told the jury that the date of the offense as alleged was not important. Finally, the State reinforced during its closing argument that appellant committed more than one offense.

Although the State reinforced that there were multiple incidents, neither the State, appellant, nor the trial court instructed the jury either that it must be unanimous or that it need not be unanimous about the specific incident underlying the jury's verdict. Accordingly, this factor weighs neither for nor against a finding of egregious harm. *See id.* ("[N]either the State nor appellant told the jurors that they must be unanimous about which criminal episode constituted each offense, nor were they told that they need not be unanimous. This factor, therefore, weighs neither for nor against finding egregious harm."); *Cosio*, 353 S.W.3d at 777 ("[N]either of the parties nor the trial judge added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdicts."); *cf. Gomez v. State*, 498 S.W.3d 691, 699 (Tex. App.–Houston [1st Dist.] 2016, no pet.) (factor weighed strongly in favor of egregious harm where "[t]he only time the jury received any instruction regarding the necessity of unanimously finding a single incident of conduct, it was affirmatively told it did not need to do so").

#### 4. All other relevant information

This factor has been used by courts to consider additional information in circumstances such as where the jury rejected one count but convicted on all other counts, *see Arrington*, 451 S.W.3d at 844–45, or where the jury sent a request for clarification during deliberations asking: "Is it our charge to determine that one or more of the specific instances related by [the complainant] did occur on or about the date mentioned in the indictment, or just that one or more of these instances did occur as testified to?" *See Gomez*, 498 S.W.3d at *699. There are no additional circumstances in this case that require consideration; accordingly this factor does not weigh for or against a finding of egregious harm.

#### C. Consideration of the Four Factors

Of the four factors, the jury charge weighs in favor of egregious harm and the state of the evidence weighs against egregious harm. The other two factors neither weigh in favor of nor against a finding of egregious harm. In both *Arrington* and *Cosio*, the Court of Criminal Appeals found no egregious harm where the erroneous jury charge permitting a non-unanimous verdict was the only factor weighing in favor of a finding of harm. *See Arrington*, 451 S.W.3d at 845; *Cosio*, 353 S.W.3d at 777–78.

Although the jury charge in this case permitted a non-unanimous verdict, the evidence presented combined with the jury's rejection of appellant's defense demonstrates that appellant did not suffer actual harm. *See Arrington*, 451 S.W.3d at 845 ("Although the instructions failed to identify the particular acts necessary to support each count, the evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause

actual harm to appellant."). We overrule appellant's first issue.

### II. Evidentiary Challenges

In his third through thirteenth issues, appellant contends the trial court erred by overruling "bolstering" objections to testimony and by denying appellant's requests for a mistrial after improper bolstering evidence was introduced. In his fourteenth and fifteenth issues, appellant contends that the trial court erred by admitting hearsay testimony into evidence.

 "Bolstering" occurs when evidence is offered by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Stated another way, bolstering is "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Id.* at 819–20 (emphasis in original). The "bolstering" objection was recognized before adoption of the rules of evidence but was not codified in the rules. *Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009). The objection now has its roots in several evidentiary rules. *Id.*

For example, a witness's credibility may be attacked or supported by non-expert testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. Tex. R. Evid. 608(a). But evidence of a witness's truthful character is admissible only after the witness's character for truthfulness has been attacked. *Id.*

Likewise, expert testimony that assists the jury in determining an ultimate fact is admissible, but expert testimony that decides an issue of ultimate fact for the jury, such as a direct opinion on the truthfulness of a child, is not admissible. *See* Tex. R. Evid. 702; *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). Testimony from an expert who testifies that a class of persons to which the victim belongs is truthful is inadmissible because it "essentially tell[s] the jury that they can believe the victim in the instant case as well." *Yount*, 872 S.W.2d at 711. Accordingly, an expert witness may not give an opinion that the complainant or class of persons to which the complainant belongs is truthful. *Id.* at 712.

We review a trial court's rulings on the admissibility of evidence under an abuse of discretion standard, and will uphold the trial court's decision if it was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). The erroneous admission of testimony is non-constitutional error that must be disregarded unless it affects the defendant's substantial rights. *See Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *see also* Tex. R. App. P. 44.2(b); *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex. Crim. App. 1993) (improperly admitted bolstering evidence is subject to a harmless error analysis); *Fischer v. State*, 207 S.W.3d 846, 860 (Tex. App.–Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 375 (Tex. Crim. App. 2008) (erroneous admission of hearsay is non-constitutional error subject to reversal only if it affects the defendant's substantial rights).

Similarly, we review a trial court's denial of a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* at 77.

## A. Complainant's Mother

In his third issue, appellant contends the trial court erred by allowing the admission of testimony from complainant's mother that she believed complainant's outcry.

During trial, there was significant discussion about whether penetration of the anus actually occurred. Complainant's mother testified that complainant told her that "my uncle, he puts a stick in me—he calls it a stick—in the middle of my rear end. He calls it his *culito*, the part where he does No. 2." The mother further testified that complainant referred to a "stick in his part." Complainant's mother clarified that complainant "calls *culito* the little hole where the poop poop comes out whenever he goes to use the restroom;" that complainant was referring to his anus; and that "culito" was not referring to the "butt cheeks" but instead to "the hole." The interpreter for complainant's mother explained that "culito" is "a diminutive of [the] word *culo*," which he stated means "asshole."

Later, the State elicited the testimony that appellant now challenges:

[THE STATE:] And just to back up and clarify. From what you understood from [complainant's] disclosure, was—did you believe that he was outcrying to a stick penetrating his anus?

[DEFENSE COUNSEL]: I'm going to object, Your Honor. That's—first of all, it's—the objection is that it lends—it's bolstering. It's basically asking her to see if she believes a witness—another witness, which is not permissible. Can't comment on the credibility of another witness.

THE COURT: That's not the question. The question is what she understood. So, that objection is overruled.

[THE STATE:] You can answer the question.

[COMPLAINANT'S MOTHER:] I believed the words of the child because he was only four years old. And the words that he was saying to me were terrible.

Appellant contends that complainant's mother should not have been permitted to testify regarding the complainant's truthfulness concerning the particular allegation.

Considering the prior testimony and potential uncertainty as to exactly what conduct complainant's outcry encompassed, the question asked what complainant's mother understood complainant's outcry to be, not whether she believed the outcry. Accordingly, the question was not seeking an opinion on the truthfulness of the child and was not an attempt to elicit the response received. The trial court did not err by overruling appellant's objection to the question. To the extent complainant's mother responded beyond the bounds of the question, appellant did not object to the response and has waived any error. *See Livingston v. State*, 739 S.W.2d 311, 335–36 (Tex. Crim. App. 1987) (where "the witness' response was not invited or encouraged by the prosecution," any error could have been cured by an instruction to disregard but nevertheless was waived by the appellant's failure to object and request the instruction). Appellant's third issue is overruled.

### B. Complainant's Pediatrician

In his fourth and eighth issues, appellant contends the trial court erred by allowing complainant's pediatrician to opine regarding complainant's credibility. In his fourth issue, appellant complains of the pediatrician's testimony that the con-

sistency of a child complainant's statements to a doctor is important in determining the truthfulness of the allegations:

[THE STATE:] And so, in speaking with a child about sexual abuse, particularly from your eyes as a physician, what is the most important piece of evidence to know if that child is being truthful?

[PEDIATRICIAN:] It is the consistency of the child's history.

[THE STATE:] And what do you mean by that?

[PEDIATRICIAN:] Well, first of all, I mean, you take the history typically from the patient.

[DEFENSE COUNSEL]: I'm going to object—excuse me, Doctor. Excuse me.

I'm going to object, Your Honor, that he's going into an area where it's going to establish believability or a witness testifying on the believability of another witness. And that's not—that would not be relevant.

THE COURT: That's overruled based on that question.

[THE STATE:] Okay. You can continue with your answer.

[PEDIATRICIAN:] I'm sorry. Can you repeat the question again?

[THE STATE:] Yeah. I was just asking if—through your eyes as pediatrician, when you are trying to determine whether or not a child has been sexually abused, what is the most important piece of evidence? And I know you said the history that the child gives. So, what does that mean?

[PEDIATRICIAN:] Well, that means that if the child is verbal, if the child can communicate, the most important critical part is the child's own account of what happened.

Appellant contends that the pediatrician's testimony was inadmissible because, when viewed in the context that the pediatrician

diagnosed complainant as having been sexually abused, the statement that the consistency of the child's history is the most important piece of evidence implied to the jury that the pediatrician believed complainant's history in making his diagnosis.

The question posed by the State in this instance was not whether complainant's statements were consistent, but what the most important factor was in determining whether complainant had been sexually abused. The question was not asking the pediatrician to comment on the truthfulness of complainant's statement, and was not improper. The trial court did not abuse its discretion by overruling appellant's objection. Appellant's fourth issue is overruled.

■■■ In his eighth issue, appellant contends the trial court erred by allowing the pediatrician to testify that consistent statements are the hallmark of credibility and that complainant's statements were consistent.

As briefly mentioned above, a police officer interviewed complainant in the pediatrician's office. The pediatrician served as an interpreter between the officer and complainant. During trial, the pediatrician testified that complainant made a disclosure to the police officer that was consistent with the disclosure he made during his medical examination with the pediatrician:

> [THE STATE:] And was it significant to you that he was consistent in explaining both to you and the officer the same abuse?
>
> [PEDIATRICIAN:] Yes.
>
> [THE STATE:] Why?
>
> [PEDIATRICIAN:] Because in pediatrics in one of the hallmarks of history taking, in cases of sexual or physical abuse or negligent [sic]—

> [DEFENSE COUNSEL]: I'm going to object, Your Honor.
>
> I'm sorry, sir.
>
> Once again, it's credibility opinion they're eliciting—the State is eliciting or trying to elicit. That would be irrelevant, Your Honor, and it's overly prejudicial.
>
> THE COURT: Ask your question again because honestly I didn't understand the first part of the answer and I don't quite get it from reading it here either. So, re-ask your question.
>
> [THE STATE:] You had said that it was significant to you that [complainant] was able to be consistent both when he told you about the abuse and also in the same statement that he gave to Officer Knotts. Why is that significant to you[?]
>
> [DEFENSE COUNSEL]: Okay. That's where I want to object, Your Honor, before he answers the question. They're trying to make [a] credibility assessment.
>
> THE COURT: Well, if I understood the answer correctly, and I'm not sure I did, he said based in pediatrics. If it's something that's based in the medical field and based in pediatrics, I will allow him to answer that. But if it's something beyond that, then I will sustain the objection.
>
> [THE STATE:] Go ahead.
>
> [PEDIATRICIAN:] In my pediatric training and all the courses available for sexual abuse, physical abuse and physical negligent, [sic] there is always a remark that consistencies in the history are the most important part that makes a credibility [sic] a primer. And in the patients that—or families that start bringing up inconsistent statements are immediate red flags for whether this is a fabrication or not. In this case the history was consistent.

This expert testimony impermissibly decided an ultimate question of fact in that

it constituted "a direct opinion on the truthfulness" of complainant's outcry. By stating that consistency was the most important indicator of credibility and that complainant's statements were consistent, the pediatrician informed the jury that he believed complainant because his statements were consistent. *See Edwards v. State*, 107 S.W.3d 107, 115–16 (Tex. App.–Texarkana 2003, pet. ref'd) (testimony impermissibly commented on the truthfulness of the child where expert identified factors to determine if a child was telling the truth and then testified that the child exhibited those factors).

■■■■ Having determined that the testimony was inadmissible, we must determine whether its erroneous admission affected appellant's substantial rights. *See Schutz v. State*, 63 S.W.3d 442, 444–46 (Tex. Crim. App. 2001) (improperly admitted expert testimony on the complainant's truthfulness is non-constitutional error); *see also* Tex. R. App. P. 44.2(b). Under that standard, we will not overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or influenced the jury only slightly. *Schutz*, 63 S.W.3d at 444.

After examining the record, we are reasonably assured that the improper admission of the testimony was harmless because the same or similar evidence was admitted without objection elsewhere. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State."); *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd) ("[I]mproper admission of evidence is not

reversible error if the same or similar evidence is admitted without objection at another point in the trial."). Complainant's mother testified without objection that complainant told her friend "the same thing that he had told me," and that complainant's story to the friend was consistent with what complainant had said to the mother. A forensic interviewer at the Children's Assessment Center testified without objection that complainant was consistent with his telling of the abuse. Likewise, appellant later admitted that complainant had been consistent in his allegations of abuse. Because similar evidence that appellant's stories were consistent was admitted without objection elsewhere during trial, appellant was not harmed by the erroneously admitted testimony. *See Leday*, 983 S.W.2d at 718; *Chapman*, 150 S.W.3d at 814. Appellant's eighth issue is overruled.

■■■■ In his sixth issue, appellant contends that the trial court erred by allowing complainant's pediatrician to testify that complainant's anal injuries combined with complainant's outcry of anal penetration "raises a big red flag that this is actually a case of potential sexual abuse."

■■■■ The challenged question was: "But if you're getting an outcry of abuse from a child and [the anal injury] is contemporaneous or it is occurring with that outcry, you as a physician, what does that mean to you?" The pediatrician's response that it "raises a big red flag that this is actually a case of potential sexual abuse" does not indicate that he believed complainant's outcry—only that the injuries he was seeing should be reassessed in light of the outcry to determine whether they were consistent with sexual abuse, as opposed to the pediatrician's previous diagnosis of constipation. The pediatrician's word choice—that it alerted him to the possibility of "potential sexual abuse"—reinforces

this conclusion. The pediatrician's statement did not constitute an expert opinion on the truthfulness of the complainant's allegations, and the trial court did not err by allowing its admission. *See, e.g., Bryant v. State*, 340 S.W.3d 1, 11 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd) (police officer's testimony that, based on complainant's interview statements, the officer "came to the conclusion a sexual assault had occurred and that is why he prepared an affidavit to obtain an arrest warrant" was not testimony offering an opinion concerning the complainant's truthfulness). Appellant's sixth issue is overruled.[2]

■ In his fifth issue, appellant contends that the trial court erred in denying a requested mistrial after the pediatrician testified as follows:

[THE STATE:] And based on what [complainant] told you up here, these details that he's given you and given that fact that he's four years old, based on your training and experience do you find that to be a specific outcry?

[PEDIATRICIAN:] Very much so, yes.

[THE STATE:] Detailed?

[PEDIATRICIAN:] Very detailed. And it's—it was very convincing, very, very—I would say very difficult not to believe a child four years of age with so many details.

Defense counsel objected that the response commented on the complainant's credibility. The trial court sustained the

objection and instructed the jury to disregard the pediatrician's statement. Appellant then moved for a mistrial, which was denied.

■ "Generally, a mistrial is only required when the improper evidence is 'clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.'" *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) (quoting *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990)). In determining whether the trial court abused its discretion in refusing to grant a mistrial, we consider: (1) the severity of the misconduct (the prejudicial effect of the testimony); (2) the curative measures taken, and (3) the certainty of conviction absent the prejudicial event. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

With respect to the first factor, the pediatrician's statement was not highly prejudicial. The jury heard complainant describe the sexual assault and was free to determine for itself whether complainant's account was detailed and his testimony convincing.[3] Moreover, there was no indication that the State's question was intended to elicit the pediatrician's opinion as to the credibility of the complainant—the question merely asked if the complainant's account of events was detailed.

---

2. Even if the statement was admitted erroneously, any error would have been harmless. The pediatrician testified without objection that "a[n anal] tear in a four-year-old child, especially when you have seen the previous history, raises a big red flag whether this child really was sexually abused in the recent weeks—in the previous recent weeks." Because similar testimony was admitted without objection, any erroneously admitted testimony would not support reversal. *See Chapman*, 150 S.W.3d at 814.

3. Additionally, the jury heard unobjected-to testimony from the police officer that was similar to the challenged testimony:

[THE STATE:] Was [complainant] able to provide you sensory details?

[OFFICER:] Yes.

[THE STATE:] And why is that important to you as an officer investigating a sexual assault crime?

[OFFICER:] Those kind of details are important because they lend to the credibility of the outcry.

Second, upon sustaining appellant's objection and without being requested to do so, the trial court immediately instructed the jury to disregard the testimony. A trial court's instruction to the jury to disregard usually cures any error. *Phillips v. State*, 130 S.W.3d 343, 347 (Tex. App.–Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904, 914 (Tex. Crim. App. 2006). The jury is presumed to follow a trial court's instruction to disregard improperly admitted evidence. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). There is no reason on this record to believe that the trial court's instruction to disregard was not effective in curing any prejudice.

Finally, we look at the certainty of conviction absent the misconduct. In sexual abuse cases, the testimony of the child victim alone is sufficient to support the conviction. *Tran v. State*, 221 S.W.3d 79, 88 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd). The jury heard complainant testify; although complainant's testimony was unclear as to whether more than one assault took place, complainant unequivocally testified that appellant sexually assaulted him. It is unlikely that the jury's decision to convict was influenced by the pediatrician's testimony that he believed complainant's story to be credible—the same story the jury heard from complainant.

Having reviewed the *Mosley* factors, we conclude that the trial court did not abuse its discretion in determining that the testimony was not so prejudicial as to require a mistrial. Appellant's fifth issue is overruled.

In his fifteenth issue, appellant contends the trial court erred by allowing the pediatrician to testify that complainant's statement to the police officer was consistent with complainant's statement to the pediatrician:

[THE STATE:] Were you able to listen to what it was that [complainant] was disclosing to Officer Knotts?

[PEDIATRICIAN:] He was disclosing to Officer Knotts pretty much the same words that—

[DEFENSE COUNSEL]: Objection, Your Honor, hearsay.

THE COURT: Sustained.

[THE STATE:] Without going into what [complainant] said to the officer, was it consistent with what he told you?

[DEFENSE COUNSEL]: Objection, hearsay and confrontation.

THE COURT: First off, let her finish the question. And once she does that, that will be overruled.

[THE STATE:] Was it consistent with what [complainant] had disclosed to you earlier when you were examining him?

[PEDIATRICIAN:] Yes, it was.

This testimony is similar to testimony considered by the court in *Head v. State*, 4 S.W.3d 258, 260 (Tex. Crim. App. 1999). In *Head*, the defendant was on trial for aggravated sexual assault of a child. *Id.* at 259. The complainant's aunt testified as the outcry witness about complainant's description of the assaults. *Id.* at 260. The State then called the criminal investigator who conducted the initial investigation of the allegations and took written statements from the complainant, complainant's mother, and the aunt. *Id.* at 259–60. The following exchange was the subject of the complaint on appeal:

[PROSECUTOR:] Were the statements [the aunt and the complainant's mother] gave consistent with—

[DEFENSE COUNSEL]: Objection, Your Honor. Calls for hearsay.

THE COURT: Overruled.

[PROSECUTOR:] Were the statements they gave to you consistent with the facts related to you by [complainant]?

[INVESTIGATOR:] Yes.

*Id.* at 260. The court stated that "[w]hether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context" or "whether the strength of the inference produces an 'inescapable conclusion' that the evidence is being offered to prove the substance of an out-of-court statement." *Id.* at 261–62 (quoting *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989)). The court reasoned:

> In the instant case, we cannot say that the trial court abused its discretion in allowing the jury to hear the disputed testimony. The trial court could have reasonably concluded that [the investigator's] testimony, when taken in context, did not lead to any inescapable conclusions as to the substance of the out-of-court statements. Specifically, the disputed testimony revealed only that the three statements related basically the same facts; it did *not* reveal the substance of what those facts were. Neither did any other evidence, at that point in the trial, indicate the contents of any of the three statements, what facts the statements had in common, or how any of the facts were consistent. At best, at the time the trial court ruled on the admissibility of the testimony, the jury may have been able to deduce what [the complainant] had told [the investigator] by referencing what she had told [her aunt]. The trial court could have reasonably determined that this sort of inferential leap did not provide the requisite degree of certainty "that the State's *sole intent* in pursuing this line of questioning was to convey to the jury" the contents of the out-of-court statements.

*Id.* at 262 (emphasis in original). The trial court concluded that "it was within the trial court's discretion to conclude that the

testimony did not reveal to the jury the substance of the out-of-court statements, but rather only conveyed that the facts themselves were uniform." *Id.* at 262–63.

As in *Head*, the pediatrician's testimony that complainant's statements were consistent "did not lead to any inescapable conclusions as to the substance of the out-of-court statements" of complainant—who had not yet testified—but instead indicated only that complainant's statements to the officer and the pediatrician were consistent. *See id.* at 262. Accordingly, the testimony was not hearsay and the trial court did not abuse its discretion in overruling appellant's objection. *See id.* at 259–62.

■ In the same issue, appellant also complains that the trial court erred by allowing the police officer to testify that complainant reported to him that a crime had occurred. As with the pediatrician's testimony, appellant contends the officer's testimony was inadmissible hearsay.

Assuming without deciding that the officer's testimony was hearsay, its introduction into evidence was harmless. The officer previously had testified without objection that complainant's mother told him a crime had been committed against her son. *See Chapman*, 150 S.W.3d at 814; *see also Smith v. State*, 238 S.W.3d 512, 516 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (improperly admitted hearsay is harmless if the same or similar evidence is admitted without objection at another point in the trial). Moreover, the statement that complainant reported a crime to the police officer was unlikely to have influenced the jury in its determination that appellant sexually assaulted complainant; the jury could have reasonably inferred from complainant's testimony and from the fact that appellant was on trial that complainant had reported that a crime had occurred. Appellant's fifteenth issue is overruled.

## C. Police Officer

In his ninth issue, appellant contends the trial court abused its discretion by allowing the police officer who interviewed complainant to testify that he believed a crime recently had been committed based on his investigation and the information he learned at the pediatrician's office. Appellant contends that the officer's testimony—which was based solely on complainant's statements to him—was essentially a statement that he believed complainant's allegations to be truthful.

The State asked the officer: "Based on your investigation and the information you had gotten at that scene, did you believe you were investigating something that had occurred recent in time to the reporting date or much further out?" Initially, we note that appellant did not object to the officer's answer that he "thought it had been recent that a crime had been committed." Appellant objected only to the State's question. Accordingly, we determine only whether the question improperly sought an opinion that complainant's statements were credible.

The State did not ask the officer to offer an opinion on the veracity of complainant's statement—only whether the officer understood complainant to be alleging a recent assault or an assault taking place "much further out." The trial court did not abuse its discretion in allowing the officer's testimony. See Bryant, 340 S.W.3d at 12 (where officer testified that he concluded based on his interview with the complainant that a sexual assault had occurred, "[t]he testimony about the factual background of a criminal investigation was materially different from offering an opinion at trial that a child witness is telling the truth"). Appellant's ninth issue is overruled.

In his tenth issue, appellant contends the trial court abused its discretion in denying a motion for mistrial after the officer testified that the allegations of sexual abuse did not appear contrived.

The State asked the officer whether, "after coming into this particular scene, you know, seeing what you saw and talking to the witnesses that you did, did this appear contrived to you in any way?" The officer responded, "No." The trial court sustained defense counsel's objection to the question and answer, and instructed the jury to disregard. The trial court denied defense counsel's motion for mistrial.

We already have set out the factors that we consider when determining whether a trial court abused its discretion by denying a requested mistrial. First, we determine that the testimony was not particularly prejudicial. While the officer's testimony essentially expressed his opinion that complainant was not fabricating the allegations—an inadmissible opinion as to complainant's truthfulness—the jury likely discerned from the officer's other statements and actions that he believed complainant. For example, the officer testified that after speaking with complainant it was clear to the officer who the named suspect would be in the investigation; that complainant provided the officer with sensory details, which were important to the officer "because they lend to the credibility of the outcry;" and after speaking with complainant the officer suggested that complainant go to the hospital to have a sexual assault exam performed.

Second, the trial court instructed the jury to disregard the testimony. There is no reason to believe that the trial court's instruction to disregard was not effective in curing any prejudice. We presume that the jury obeyed the instruction. See Archie v. State, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011); Gamboa, 296 S.W.3d at 580.

Additionally, the jury charge instructed the jury that it was the exclusive judge of the facts proved and the credibility of the witnesses, and that the jury must not consider matters not in evidence before it. *See Hawkins*, 135 S.W.3d at 84 (courts of appeals should consider the jury charge when analyzing the curative measures *Mosley* factor).

The third factor—the certainty of the conviction absent the prejudicial event—also weighs in favor of the trial court's ruling. The jury heard complainant testify about the sexual assault and was free to judge for itself whether it believed the facts to be contrived. As with the pediatrician's testimony above, the officer's testimony that complainant's story did not seem contrived likely did little, if anything, to persuade the jury. *See, e.g., Newby v. State*, 252 S.W.3d 431, 439 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) ("[A]ppellant's conviction was fairly certain, regardless of the prosecutor's improper remarks, considering the unambiguous testimony by [the complainant].").

We conclude that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. Appellant's tenth issue is overruled.

### D. Psychologist

In his eleventh issue, appellant contends the trial court erred by allowing the psychologist who interviewed complainant to testify that it was not typical in her experience for children to lie about sexual abuse. The psychologist testified as follows:

> [THE STATE:] Is it typical in your experience for children to lie about sexual abuse?
>
> [PSYCHOLOGIST:] No.
>
> [DEFENSE COUNSEL]: Objection, Your Honor, bolstering.
>
> THE COURT: Overruled.

> [THE STATE:] And can you explain that for us?
>
> [PSYCHOLOGIST:] Sure. Children can lie about a lot of things in their lives, but sexual abuse is not typically one of them. It is one of the most shameful, embarrassing things for a child to talk about. It's not something that would ever be chosen as a form of lying just for fun. It's not a fun experience for children. And oftentimes, their lives significantly change in a negative way.
>
> [THE STATE:] And do kids know how to lie about things that they don't have knowledge of, such as sex?
>
> [PSYCHOLOGIST:] No.
>
> [THE STATE:] And tell me about that.
>
> [PSYCHOLOGIST:] A child to make up something [sic] that they have no knowledge of—because a child that young shouldn't know anything about that. So, it wouldn't make sense that they'd even be able to conjure up an incident, you know, such as sexual abuse to come up with something to lie about.
>
> [THE STATE:] So, if a kid doesn't know what anal sex is or anal penetration, it's with—it's not within his wheelhouse to even try to make something up about it, is what you're saying?
>
> [PSYCHOLOGIST:] Yes.

Appellant contends that the psychologist's testimony that it was not typical for children to lie about sexual abuse constituted an impermissible comment as to the credibility of a class of persons to which complainant belongs.

An expert is not permitted to opine that the complainant or class of persons to which the complainant belongs is truthful. *Yount*, 872 S.W.2d at 712. In *Yount*, the Court of Criminal Appeals affirmed the court of appeals's decision that bolstering testimony was inadmissible where a doctor testified that she had "seen very few cases

where the child was actually not telling the truth." *Id.* at 707–08. Other courts of appeals, including this court, have found similar testimony to be inadmissible. *See, e.g., Wiseman v. State,* 394 S.W.3d 582, 587 (Tex. App.–Dallas 2012, pet. ref'd) (trial court erred when it allowed doctor to testify that approximately two percent of children who report sexual abuse are making false allegations); *Lopez v. State,* 288 S.W.3d 148, 158–59 (Tex. App.–Corpus Christi 2009, pet. ref'd) (where doctor was asked whether teenage boys are truthful when they make a sexual abuse outcry, doctor's response that "[g]enerally, they tell the truth" was inadmissible); *Lane v. State,* 257 S.W.3d 22, 27 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) ("Dr. Thompson's testimony that false accusations of childhood sexual assault are very rare had the effect of telling the jury they could believe E.A.'s testimony, which is expressly forbidden."); *Aguilera v. State,* 75 S.W.3d 60, 64–66 (Tex. App.–San Antonio 2002, pet. ref'd) (psychologist's testimony that only 10 percent of children lie about sexual abuse was inadmissible).

As in the cases cited above, the psychologist's testimony here was inadmissible because it offered an opinion that the class of persons to which complainant belongs—children—are typically truthful. *See Yount,* 872 S.W.2d at 712. Accordingly, the trial court abused its discretion by permitting the testimony over objection. *See id.*

 Having determined that the admission of the testimony was error, we must determine whether the error affected appellant's substantial rights. *See Schutz,* 63 S.W.3d at 444–46; *see also Lopez,* 288 S.W.3d at 158 ("The admission of Dr. Hill's truth testimony is non-constitutional error, and a non-constitutional error 'that does not affect substantial rights must be disregarded.' ") (quoting Tex. R. App. P. 44.2(b)). We will not overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or influenced the jury only slightly. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

The psychologist responded to the question "Is it typical in your experience for children to lie about sexual abuse?" with a concise "No" answer. The psychologist's response was not overly emphatic or likely to unduly influence the jury. *See, e.g., Lopez,* 288 S.W.3d at 158 (when asked whether teenage boys are truthful when they make a sexual abuse outcry, doctor's response that, "[g]enerally, they tell the truth," was "not an incredibly impactful endorsement of [complainant]'s truthfulness"). Unlike other cases where the testimony was found to be harmful, the testimony in this case that it was "not typical" for children to lie was not specific and did not carry the same air of legitimacy that other experts' testimonies purported to offer. *Cf. Wiseman,* 394 S.W.3d at 587 ("The trial court erred when it allowed Lind to testify to the percentage of children who lie about being sexually abused."); *Aguilera,* 75 S.W.3d at 66 (erroneous admission of psychologist's testimony that only 10 percent of children lie about sexual abuse affected appellant's substantial rights).

Moreover, the State did not refer to the psychologist's testimony that children do not typically lie in its closing argument. *See, e.g., Wilson v. State,* 90 S.W.3d 391, 394 (Tex. App.–Dallas 2002, no pet.) (finding error was harmless in part because, "[d]uring closing arguments, the State emphasized to the jurors that they were the judges of [complainant's] credibility and never referred to [the expert's] testimony about the percentage of children who lie about being sexually abused"). The jury charge in this case also instructed the jury that it was the exclusive judge "of the

credibility of the witnesses and the weight to be given their testimony." *See id.*

Finally, appellant failed to object to the psychologist's subsequent testimony that "[c]hildren can lie about a lot of things in their lives, but sexual abuse is not typically one of them;" children do not "know how to lie about things that they don't have knowledge of, such as sex;" and that "if a kid doesn't know what anal sex is or anal penetration, it's with—it's not within his wheelhouse to even try to make something up about it . . . ." These unobjected-to responses essentially restate the challenged testimony; they all explain why children do not typically lie about sexual abuse.

After examining the record as a whole, we are assured that either the error did not influence the jury or did so only slightly. The testimony was not calculated to inflame the jury's emotions; substantially similar testimony was allowed without objection; the jury charge instructed the jury that it was the sole judge of the credibility of the witnesses and the weight to be given to their testimony; and the jury heard complainant provide a detailed account regarding appellant's sexual assault. *See, e.g., Lopez*, 288 S.W.3d at 159 (admission of testimony that teenage boys generally tell the truth about sexual abuse was harmless where "[t]he jurors had ample evidence before them through which they could form their own opinions of [complainant's] truthfulness;" the "jury saw and heard [complainant] testify about the sexual assault with specific detail, giving them an opportunity to evaluate his maturity and credibility;" and the jury heard complainant's sister "testify about his behavior after [appellant] left him at her home" after the assault, including that complainant appeared "dazed," "confused," and "just looked kind of thrown off"); *Wilson*, 90 S.W.3d at 393–94 (error was harmless where complainant testified "with spe-

cific detail that Wilson sexually assaulted her on numerous occasions while she was between the ages of six and eleven" and complainant's outcries were corroborated by medical evidence). Accordingly, appellant's eleventh issue is overruled.

▬ In his twelfth issue, appellant contends that the trial court erred by denying a mistrial after the psychologist testified that complainant displayed behavior consistent with children who have been sexually abused. In his thirteenth issue, appellant contends the trial court erred by allowing the psychologist to testify that she observed signs of "minimization" in complainant, which she testified might explain why complainant testified at trial that he was abused only one time.

The challenged testimony is relevant and admissible. *See Yount*, 872 S.W.2d at 708–09 (noting that *Cohn v. State*, 849 S.W.2d 817 (Tex. Crim. App. 1993), held that expert's testimony identifying certain behavioral characteristics exhibited by sexually abused children, and that complainant's behavior was consistent with those behavioral characteristics, was relevant and admissible); *Shaw v. State*, 329 S.W.3d 645, 651 (Tex. App.–Houston [14th Dist.] 2010, pet. ref'd) ("[T]estimony is relevant if the witness explains that certain behavior is consistent with sexual abuse and the child in question has exhibited such behavior."); *DeLeon v. State*, 322 S.W.3d 375, 382 (Tex. App.–Houston [14th Dist.] 2010, pet. ref'd) ("Expert testimony that identifies certain physical or behavioral manifestations of sexual abuse and relates those characteristics to the complainant is admissible even if the complainant has not been impeached."). And, regarding appellant's twelfth issue, where the trial court sustains an objection to the testimony and instructs the jury to disregard, we presume that the jury obeyed the trial court's instruction. *See Archie*, 340 S.W.3d

at 741; *Gamboa*, 296 S.W.3d at 580. We see no evidence that the jury did not do so. Accordingly, appellant's twelfth and thirteenth issues are overruled.

### III. Complainant's Medical Records

In his seventh and fourteenth issues, appellant contends the trial court erred by admitting the complainant's medical records into evidence because they were inadmissible hearsay and constituted a direct comment on the complainant's truthfulness.

There is an exception to the hearsay rule for statements made for medical diagnosis or treatment. Tex. R. Evid. 803(4). The rule excepts statements that both (1) are made for—and are reasonably pertinent to—medical diagnosis or treatment; and (2) describe medical history; past or present symptoms or sensations; their inception; or their general cause. *See id.*

▆▆ The State offered the pediatrician's medical records for admission into evidence during the pediatrician's testimony. Defense counsel objected to the records on the basis that they contained hearsay. The following exchange took place during a discussion at the bench:

> THE COURT: Okay. Based upon my review of the records, I've marked some places. Well, let me say first off, in general, I'm going to allow the records in evidence as State's Exhibit No. 14. However, there are some places that I have flagged here that I believe are hearsay that are made not necessarily for the purposes of medical treatment, but as part of the investigation once police are called.
>
> So, I'm not going to allow these places that I have marked. I'm going to assume these are [the] ones that you are objecting to.
>
> [DEFENSE COUNSEL]: Yes, sir.
>
> THE COURT: And I will sustain the objection to these specific places and order that they be redacted. And once redacted will allow State's Exhibit No. 14 to come. [sic] If y'all want me to read those into [the] record I will, but I've marked them if you want to—
>
> [DEFENSE COUNSEL]: So—okay. I guess it comes in—

The trial court proceeded to identify each portion of the medical records that it believed constituted inadmissible hearsay and ordered the State to redact those portions. Defense counsel raised an objection to the diagnosis of "suspected ARHO sexual abuse" in the records, but did not identify any other unredacted but objectionable portions of the report.[4]

---

4. With respect to the medical diagnosis, appellant contends its admission was error because it expressed a direct opinion on the truthfulness of complainant's allegations. Appellant argues that the pediatrician's diagnosis of sexual abuse was based solely on the patient history provided by complainant and on "physical evidence [that] could be attributable to either constipation or abuse." We conclude that the trial court did not abuse its discretion in allowing into evidence the pediatrician's medical diagnosis, which was based both on complainant's history and on the pediatrician's own medical examination, the results of which were consistent with the sexual abuse described by complainant. *Cf. Salinas v. State*, 166 S.W.3d 368, 370–72 (Tex. App.–Fort Worth 2005, pet. ref'd) (doctor's diagnosis of sexual assault was a direct comment on the credibility of the complainant where it was based solely on the complainant's history because the only physical exam was conducted four-and-a-half months after the alleged assault and revealed no signs of abuse); *see also Burns v. State*, 122 S.W.3d 434, 438 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd) (the Rule 803(4) exception to the hearsay rule for statements made for the purposes of medical diagnosis or treatment "has been interpreted to include statements by suspected victims of child abuse as to the source of their injuries").

On appeal, appellant identifies a number of statements in the medical records that he contends constitute hearsay and were not made for the purpose of medical diagnosis or treatment. Appellant contends the statements do not fall within any other exception to the hearsay rule.

After defense counsel objected to the medical records on the basis that they contained hearsay statements, the trial court ordered certain portions redacted and stated, "I'm going to assume these are [the] ones that you are objecting to." At that point, it was incumbent on appellant to identify with specificity any other objectionable portions of the medical records. *See* Tex. R. Evid. 103(a)(1) (party may claim error in a ruling to admit evidence only if the error affects a substantial right and the party timely objected and stated the specific ground for the objection); Tex. R. App. P. 33.1(a) (complaints are not preserved for appellate review if not raised to the trial court by a timely objection that stated the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint); *Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (objection must adequately notify the trial court of the basis of the complaint to preserve error). Appellant's general hearsay objection to the medical records did not preserve error as to any of the specific, unobjected-to statements that appellant now challenges on appeal. *See Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995) (general objection to entire video recording without specific reference to challenged material did not inform trial court of specific objection and did not preserve error for appeal); *Ross v. State*, 154 S.W.3d 804, 812–13, 813 n.7 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd) (error not preserved where trial court took note of admissibility objections to specific portions of interview tapes, but portions challenged on appeal were different portions not specifically objected to at trial); *Gilbert v. State*, 840 S.W.2d 138, 145 (Tex. App.–Houston [1st Dist.] 1992, no pet.) ("[E]ven though parts of the letter may have been inadmissible, appellant made no specific objection to parts of the letter. '[W]hen an exhibit contains both admissible and inadmissible material the objection must specifically refer to the material deemed objectionable.'") (quoting *Beltran v. State*, 728 S.W.2d 382, 387 (Tex. Crim. App. 1987)). Appellant's seventh and fourteenth issues are overruled.

## IV. Cumulative Effect of Alleged Errors

In his sixteenth issue, appellant argues that the cumulative effect of the errors merits reversal even if no single error is harmful.

"A number of errors, even if harmless when separately considered, may be harmful in their cumulative effect." *Linney v. State*, 401 S.W.3d 764, 782 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd). This doctrine provides relief only if the cumulative effect rendered the phase of the trial fundamentally unfair. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (citing *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)). Non-errors may not be considered in determining whether cumulative harm requires reversal. *See Melancon v. State*, 66 S.W.3d 375, 385 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd) (en banc).

A review of the trial court's errors is appropriate to determine whether their cumulative effect requires reversal.

The jury charge erroneously allowed a non-unanimous verdict, but it is unlikely that different members of the jury convicted appellant based on different instances of conduct. The trial court also erred by allowing: (1) the pediatrician to testify

that consistent statements are the hallmark of credibility and that complainant's statements were consistent; (2) the police officer to testify that complainant reported to him that a crime had occurred; and (3) the psychologist to testify that it was not typical in her experience for children to lie about sexual abuse. We found each instance to be harmless error that did not affect appellant's substantial rights. Viewed together, the testimony was not so inflammatory that the jury could not fairly weigh the evidence and reach its own decision as to appellant's guilt—especially in light of complainant's detailed testimony of the assault. Reviewing the errors in light of the entire record, we conclude that the cumulative effect of the harmless errors did not render appellant's trial fundamentally unfair. *See, e.g., Leyba v. State,* 416 S.W.3d 563, 574 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd) ("In light of the entire record, we cannot determine that the prosecutor elicited this inadmissible evidence for inflammatory purposes, or that the jury was affected in such a way as to deprive Leyba of a fair and impartial trial. We therefore reject any contention that the cumulative effect of the trial court's errors was harmful."). Appellant's sixteenth issue is overruled.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

