**Affirmed and Memorandum Opinion filed August 30, 2018.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-17-00401-CR

**ROBERT SHEROD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1440723**

## MEMORANDUM OPINION

We consider two questions in this appeal from a conviction for super aggravated sexual assault of a child: (1) whether the trial court abused its discretion when it denied three motions for mistrial, and (2) whether the trial court abused its discretion when it excluded evidence on the basis of hearsay. For reasons explained more fully below, we conclude that the trial court did not err in any of its rulings, and we affirm the trial court's judgment.

# BACKGROUND

The complainant in this case is a five-year-old boy who lived in a crowded two-bedroom duplex. In one bedroom were the complainant, his older sister, his mother, and his mother's boyfriend. In the other bedroom were appellant and his girlfriend.

The duplex lacked running water, which meant that the occupants were required to bathe elsewhere. One of these other locations was the house belonging to appellant's mother. Appellant would stop there after work for a shower, and occasionally the complainant would accompany him.

After one visit to appellant's mother's house, the complainant made an outcry statement to his own mother. The complainant said that appellant came into the bathroom and put his mouth on the complainant's penis. Appellant then put his own penis in the complainant's mouth. Later, appellant took the complainant into a bedroom and "went into [the complainant] so hard [the complainant] just stopped breathing, and all [the complainant] could do was cry."

## MOTIONS FOR MISTRIAL

In his first two issues, appellant complains about the trial court's rulings on three motions for mistrial. These motions arose during the testimony of two separate witnesses. We examine each witness's testimony in turn.

### A.    The Child Advocate

The first witness was a child advocate who interviewed the complainant two days after the outcry. The advocate testified that the complainant was able to articulate both his abuse and his abuser, but the advocate described these disclosures in the most general of terms, without details of any kind. The advocate also testified that she perceived delays in the complainant's development, and that the

complainant exhibited a fearful demeanor during the interview: "He appeared embarrassed at times as evidenced by him hiding under tables, and hiding behind the chair, and [as] evidence[d] by him covering his mouth up at different times and not wanting to look at me."

The advocate testified that she referred the complainant to another clinician for an extended assessment. The reasons for that referral prompted a series of objections and motions, which we reproduce here:

Q. Did you continue your interview?

A. Once I was done with [the complainant], with my one interview, I was done with him.

Q. Now, what exactly is a forensic interview, an extended forensic interview? Sorry.

A. So after a child has done a forensic interview, sometimes kids, like I said, are not ready to talk about it in one session. Some may have shared a little bit, but we think more has happened.

DEFENSE: Excuse me. I object, Your Honor, that's—

COURT: What is your legal objection?

DEFENSE: Under Rule 702, improper comments on credibility of a child.

COURT: Please rephrase the question.

DEFENSE: And I'll ask that in this case that the jury be instructed to disregard that last answer.

COURT: Ladies and gentlemen, please disregard the witness's last answer. You may continue.

Q. Did you and the officer discuss the possibility of an extended assessment?

A. Yes.

Q. For [the complainant]?

A. Yes.

Q. And if you could summarize for us what an extended forensic interview is.

A. It is pretty much a forensic interview, but broken up into five or six sessions. So it's a slower paced interview.

Q. And do you conduct those?

A. No.

Q. Why not?

A. Again, I try to stay neutral as a forensic interviewer, so I meet with the child one time, and if they have an extended assessment done, they're referred to another clinician.

Q. And was [the complainant] referred to an extended interview?

A. Yes.

Q. Why?

A. To me, more had happened—

DEFENSE: See, I'm going to object to that, Your Honor. 702—

COURT: Sustained.

DEFENSE: And, again, ask the jury to be instructed to disregard.

COURT: Ladies and gentleman, please disregard the witness's last fragmented sentence.

DEFENSE: And I move for a mistrial.

COURT: Denied.

Appellant challenges this adverse ruling in his first issue on appeal.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we consider the trial court's ruling in light of the arguments that were before the court at the time of its ruling. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). If that ruling was within the zone of reasonable disagreement, then we must uphold it. *Id.*

4

A mistrial is required when objectionable conduct is so unfairly prejudicial that no instruction would be effective towards curing it. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."); *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) ("Generally, a mistrial is only required when the improper evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.").

Appellant contends that prejudice was incurable in this case because the advocate improperly commented on the credibility of the complainant. We, however, cannot agree that the advocate's comment was so severe as to warrant a mistrial, considering that the advocate never testified about the details of the complainant's disclosures. The advocate testified in the most general of terms that the complainant disclosed that he had been sexually abused and that he could name his abuser. The advocate never identified the nature of the abuse or the name of the abuser that she learned from these disclosures. Thus, the jury was never fully informed as to what the advocate knew or what she could have believed from the complainant's disclosures. Based on the generality of the advocate's comment, the trial court could have reasonably determined that the comment was not so severe as to be incurable.

Appellant also contends that the advocate's comment was prejudicial because it "suggested to the jury that Complainant was abused by Appellant and simply not disclosing it at trial." This argument is unpersuasive for at least three reasons.

First, the advocate never testified that appellant was the complainant's abuser.

Second, the advocate could not have suggested that the complainant was not disclosing his abuser at trial because the advocate testified before the complainant.

And third, when the complainant did testify, he affirmatively identified appellant as his abuser. The identification was not made by name or in open court (the complainant testified by closed-circuit television), but the complainant singled out his abuser in an exhibit, and the exhibit was a photograph of appellant. The complainant also described his abuser as the man who "worked in the car wash," and there was testimony from other witnesses that appellant was the supervisor of a car wash.

For the foregoing reasons, we overrule appellant's first issue.

## B. The Nurse

The other witness was a nurse who examined the complainant on the day of his outcry. Before she discussed her findings from the complainant's individual examination, the nurse testified about the general procedures of a sexual assault examination. This testimony sparked two back-to-back motions for mistrial, which we reproduce here:

Q. Could you describe the anogenital area for us?

A. So, the skin that's in that area is similar to your mucous membranes. So, it's closer to the lining of your mouth, in that it has a certain pliability and elasticity to it. It's also self-lubricating and secretes secretions to keep it loose and moist and lubricant to be able to open and close. And it has a certain amount of pliability to it.

Q. And in examining young children that go in for sexual assaults, would you say it is more common or less common to identify anogenital injuries?

DEFENSE: Object to the relevance, as in other cases.

COURT: She can testify within the scope of her experience. It's overruled.

A. Less common to see injuries in the anogenital exams.

Q. Why is that?

6

A. Because of the type of skin it is and because of the pliability of it, it gives more easily. It's able to kind of accommodate, open and close, that type of thing. Because of the type of skin that it is, it often heals very well, quickly and without any residual scarring.

Q. And if you—does a lack of injuries mean that the victim isn't telling the truth?

A. No.

DEFENSE: Your Honor, I object to that. That is 702, and that's improper bolstering under 702 and Schultz.

COURT: Rephrase your question.

DEFENSE: I object, Your Honor. And I'd like to get a ruling because that evidence is still on the floor. If you rule it's inadmissible, then I'm going to ask the jury be instructed to disregard and I understand where the Court is coming from but I have to.

COURT: Can both sides approach?

DEFENSE: Yes, ma'am.

(Conference at the bench, on the record)

COURT: There are two reasons I'm bringing you up here. One is we're going to quit right before 5:30, just so you know. And then two, just so I'm clear of the last question, did you ask, is lack of [injury] indicative of not telling the truth?

STATE: I did. I can rephrase.

COURT: I'll sustain the objection.

DEFENSE: I'm going to ask you to instruct the jury.

COURT: Okay.

(Conference concluded)

DEFENSE: Judge, for the record, I'm going to renew the objection that I made to that question.

COURT: All right. That ruling is sustained. And, ladies and gentlemen, please disregard the witness's last answer.

7

DEFENSE: And again, Your Honor, respectfully move for a mistrial.

COURT: All right. That's denied. Continue.

Q. Does the absence of anogenital injury mean that a sexual assault did not occur?

A. No.

Q. And why is that?

A. Because the area—can I explain it in the way I explain it to parents?

Q. Yes, ma'am.

A. So, the way I would explain it to a parent is, there are many different ways in which sexual assault occurs with children. And it's possible to be touched down there and for contact to be made down in that area and it not to leave any mark. So that when we look at the body, we may not see any actual mark or injury on their body, but that doesn't mean that what the child said did not occur.

DEFENSE: Excuse me. I object to that. That's the same objection. While I appreciate what you might say to a parent, that's—

COURT: What's your legal objection?

DEFENSE: Improper bolstering, violation of rule 702, violation of Schultz v. State.

COURT: That's sustained. Please rephrase your question.

DEFENSE: And ask that the jury be instructed to disregard the last portion of that statement that she said about the child.

COURT: All right. Please—ladies and gentlemen, please disregard the last answer, the last portion regarding the child.

DEFENSE: Again, respectfully move for a mistrial.

COURT: That's denied.

8

Appellant complains about these two adverse rulings, claiming that the nurse's testimony was incurable because it had the improper effect of bolstering the complainant's credibility. His argument proceeds like this: If, as the nurse testified, a child *could* be telling the truth about a sexual assault even without evidence of anogenital injuries, then the complainant *must* be telling the truth about his sexual assault because there is evidence that he actually sustained anogenital injuries. In support of this argument, appellant refers to testimony that the nurse found a small anal abrasion on the complainant, which she said was indicative of trauma and consistent with a sexual assault.

The flaw in appellant's argument is that, at the time of his motions for mistrial, the evidence had not yet established that the complainant had suffered any anogenital injuries. When the nurse made her objectionable comments, she was only discussing sexual assault examinations in general. She had not yet discussed her findings relating to the complainant in particular. Thus, the trial court could have reasonably concluded that the nurse's comments did not bolster the complainant's credibility and were not so prejudicial as to warrant a mistrial.

Appellant additionally argues that the nurse's testimony was incurable because the complainant's credibility was "possibly the most important consideration at trial." Appellant cites to evidence that the complainant had a history of lying, that he once denied knowing appellant, and that he may have lied about the abuse after hearing a similar story of abuse from a relative. These points are not persuasive. The jury was free to rely on the complainant's testimony alone, and he testified that appellant committed the sexual assault. The same testimony was given by the complainant's mother, who provided the outcry statement. The jury's decision to convict was more likely influenced by this direct evidence of guilt, and by the evidence that the complainant had actually suffered anogenital injuries, than by the

nurse's earlier comments that a hypothetical sexual assault can be committed even without evidence of anogenital injuries. *Cf. Flores v. State*, 513 S.W.3d 146, 166–67 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (pediatrician's testimony that the complainant's story was convincing was not so prejudicial as to warrant a mistrial where the jury heard the same story of abuse from the complainant and the jury was free to determine for itself whether the story was convincing).

We conclude that the trial court did not abuse its discretion by denying these two motions for mistrial. Accordingly, we overrule appellant's second issue.

## HEARSAY EVIDENCE

A pediatrician conducted a follow-up examination of the complainant approximately two weeks after his outcry. The complainant's mother did not attend this particular appointment. Instead, her boyfriend presented as the complainant's sole caregiver.

The pediatrician found that the boyfriend was "incompetent as a caregiver" because he was "illiterate" and possessed "almost no information" regarding the complainant's history. The pediatrician also made the following remarks about the boyfriend in the medical records:

> BF seems to need repetitive and simply phrased questions in order to provide answer[s] to questions. Repeatedly states "I just don't want to get into any trouble." When asked why he would get into trouble, does not supply answer.

When appellant offered the medical records into evidence, the State objected to the excerpted portion on the basis of hearsay. Appellant responded that the excerpt was admissible under Rule 803(4), which provides a hearsay exception for statements made for the purpose of medical diagnosis or treatment. The trial court ruled that the hearsay exception did not apply and admitted the records with the

10

excerpted portion redacted. Appellant now complains of that ruling in his third issue on appeal.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We must uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Under Rule 803(4), a hearsay statement is admissible if the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." *See* Tex. R. Evid. 803(4). The proponent of the hearsay statement has the burden of showing that the out-of-court declarant was aware that the statement was made for such a purpose and that proper diagnosis or treatment depended upon the veracity of the statement. *See Taylor v. State*, 268 S.W.3d 571, 588–89 (Tex. Crim. App. 2008).

Appellant argues that the excerpted portion should have been admitted because the pediatrician testified in a hearing outside the presence of the jury that the boyfriend's statements factored into her impression of the complainant's chaotic living environment. The flaw in this argument is that the pediatrician was not the declarant of the statements that appellant was seeking to admit. The boyfriend was the declarant, and the pediatrician merely memorialized his out-of-court statements. *See Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (the child victim's mother was the declarant, not the doctor who recorded her statements in the medical records).

To be admissible under Rule 803(4), appellant had to show that the boyfriend made his statements for the purpose of medical diagnosis or treatment. *See Taylor*,

11

268 S.W.3d at 588–89. The trial court could have reasonably concluded that appellant did not satisfy this burden. The statements, on their face, pertain more to the boyfriend's self-interest than to the complainant's need for medical diagnosis or treatment. Even the pediatrician testified that the boyfriend's statements were "not pertinent to the diagnosis." Based on this record, we conclude that the trial court did not abuse its discretion by excluding the hearsay evidence.

Even if we were to assume for the sake of argument that the trial court had abused its discretion, we could not agree with appellant's remaining argument that the trial court's decision resulted in harm.

Under the standard for harm that would be applicable here, the trial court's judgment could not be reversed unless its error affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *see also Taylor*, 268 S.W.3d at 592 (conducting a harm analysis for nonconstitutional error). Appellant argues that he met this standard because the trial court's ruling "put [him] at an unfair disadvantage because [he] could not justify his theory that [the boyfriend] played a role in Complainant's abuse allegations." This argument fails for at least three reasons.

First, the boyfriend's statements were not necessarily inculpatory. The medical records do not reveal what questions were asked of the boyfriend or why he thought that he may have been in trouble by answering them. The State posits that the boyfriend may have just had a cautious disposition. Another possible explanation is that the boyfriend feared that if he disclosed too much information to the pediatrician, he might be jeopardizing the mother's rights to her children (who, within three weeks, were taken away by CPS and placed into foster care).

Second, appellant already had an opportunity to explore whether the boyfriend was responsible for the complainant's abuse. Defense counsel asked the complainant's mother if the boyfriend was ever alone with the children, and she

testified that he was not. Defense counsel also explored the subject with appellant's girlfriend, who was the other adult living in the shared duplex. She testified that the complainant did not like the boyfriend, but she stopped short of suggesting that the boyfriend was sexually abusing the complainant.

Third, there was strong evidence that the boyfriend was not the abuser. The complainant was shown pictures of both appellant and the boyfriend. The complainant identified appellant as his abuser and the boyfriend as "a best friend." Also, there was testimony that the boyfriend attended the complainant's separate examinations with the nurse and the pediatrician. The nurse testified that the complainant did not exhibit any fear or apprehension by the boyfriend's presence during the examination, and the pediatrician likewise testified that she was given no reason to suspect that the boyfriend had been abusing the complainant.

Considering the record as a whole, we cannot say that any error in the exclusion of the hearsay evidence affected appellant's substantial rights. We therefore overrule his third issue.

## CONCLUSION

The trial court's judgment is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Boyce, Christopher, and Busby.
Do Not Publish — Tex. R. App. P. 47.2(b).