# NO. 12-23-00272-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DONALD BRIAN ELLIS,*<br>*APPELLANT* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury convicted Appellant, Donald Brian Ellis, of aggravated sexual assault of a disabled person and assessed punishment at imprisonment for life.[1]  In his sole issue, Appellant challenges the admission into evidence of (1) a police officer's testimony that he evaded arrest and (2) a video of the victim.[2]  We affirm.

## BACKGROUND

R.E., the sister of the victim, J.H., testified that when the offense occurred, J.H. was spending the night at her home.  R.E. explained that J.H. is intellectually disabled, cannot care for herself, and is unable to read and write.  R.E. awakened during the night and noticed that Appellant, her husband at the time, was not in bed.  Upon walking into the living room, R.E. saw Appellant

---

[1] *See* TEX. PENAL CODE ANN. § 22.021 (West 2019).

[2] *See* U.S. CONST. amend. VI; ***Crawford v. Washington***, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177 (2004); TEX. R. EVID. 404(b).

with the victim's breast in his mouth, his right hand between her legs, and his fingers inside her sexual organ. Although R.E. dressed J.H. in panties and pajamas before putting her to bed, both J.H. and Appellant were naked. R.E. screamed at Appellant and attempted to keep him inside the house, but Appellant "grabbed his pants and a shirt and ran outside naked[]" while R.E. attempted to console J.H., who was upset and crying.

R.E. called 911, and Officer Christian Barajas of the City of Grand Saline Police Department responded to the scene. According to Barajas, when he arrived, J.H. appeared to be nude, but when he entered the residence, she wore pajamas that resembled "something that a child would wear." Barajas's body camera footage, which included his questioning of J.H. at the scene, was admitted into evidence without objection. After speaking with R.E., Barajas unsuccessfully attempted to locate Appellant, and an ambulance transported J.H. to the hospital for an examination by a sexual assault nurse examiner (SANE). At this point in the testimony, defense counsel objected that the motion in limine excluded other acts, such as evading arrest. The State responded that "it's not 404(b) because it's intrinsic to this offense[,]" and the trial judge overruled the objection. Barajas then testified that Appellant evaded arrest on foot, but Barajas and other officers eventually arrested Appellant after subduing him with a taser. R.E. was present during Appellant's arrest, and she testified without objection that the arresting officers tasered Appellant.

Forensic psychologist Dr. Paul Andrews testified that the State retained him to evaluate whether J.H. is capable of consenting to sexual activity. Andrews reviewed the police report, as well as J.H.'s educational records, and spoke with collateral sources, including J.H.'s mother, brother, and her brother's girlfriend. According to Andrews, J.H.'s school records estimated her IQ at 31, and collateral sources informed him that J.H. needs "a lot of supervision" for self-care and household management. Specifically, J.H. is unable to make food for herself, needs help using public restrooms, and sometimes needs assistance dressing herself. Andrews spent approximately an hour and a half with J.H., and he explained that her abilities appeared to be consistent with the information he received from records and collateral sources.

Andrews administered an IQ test to J.H., and she scored 40, which is the lowest possible score on that instrument, and he explained that J.H.'s "actual score may have been that 31 that was reported in the school records, but it was certainly 40 or below." Andrews also attempted to administer an "independent living scale," but could not complete the test because "her responses were so random and so disjointed that it made no sense to complete the whole test." In addition,

2

Andrews tried to administer a "collection of problem-solving vignettes" to J.H., and his "overall impression was that she was not capable of giving consent probably for most any important decision because she couldn't identify the problem, the risks, the consequences[,] or make a choice about what should be done." Andrews asked J.H. questions regarding her sexual knowledge, and he ultimately concluded that J.H. lacked the ability to consent to sexual activity. Andrews explained that J.H.'s disability might be visually apparent to the average person, and her disability would "certainly" be apparent "if there's any verbal interaction."

William Crawford, an investigator with the Van Zandt County District Attorney's Office, testified that he and the prosecutors met with J.H. and her family, and he recorded the meeting between J.H. and the prosecutor on his body camera. When the State offered the video from the body camera into evidence, defense counsel objected that it was hearsay, irrelevant, and Appellant lacked an opportunity to cross-examine J.H. Outside the presence of the jury, the trial judge allowed counsel to examine J.H. "to determine whether or not she is available to be cross-examined[,]" and the trial judge also questioned J.H. The trial judge ultimately determined that J.H. is unavailable to testify because she cannot appreciate an oath to tell the truth and concluded that the video from Crawford's body camera is "a summary of other evidence already before the jury regarding the disability of [J.H.] and evidence . . . on the issue of consent[.]" The trial judge overruled defense counsel's objection and concluded that J.H. is unavailable and the video "does not violate the required court test in *Crawford*[.]" The State published the video to the jury.

The video is approximately eight minutes long. J.H. does not mention the offense or anything related to the offense in the video. Rather, the video merely shows J.H. talking to one of the prosecutors (who is off camera) about entirely unrelated matters, such as J.H.'s necklace, family, dog, favorite color, and movies she enjoys. The State asserted at trial that it offered the video "as demonstrative of her capacity[,]" "the obvious nature of her intellectual capacity[,]" and as "relevant as to her current state of mind today."

Sonia Sims, a SANE who examined J.H., explained that J.H.'s intellectual disability became apparent when she asked J.H. for her name and date of birth, and she described J.H.'s demeanor as childlike. J.H. told Sims that Appellant put his hand between her legs and "pushed down on [her] throat hard." During her anogenital examination of J.H., Sims found evidence of injuries to J.H.'s sexual organ. Sims collected samples from J.H.'s body, took photographs, and sent the samples for analysis. Laura Guadian, a forensic biologist with the Southwestern Institute

3

of Forensic Sciences (SWIFS), analyzed the samples Sims collected, and she identified male DNA from the external swab and the vaginal swab of J.H. Guadian stored the samples "for future analysis pending the submittal of the suspect standard." Officer McKenzie Chandler of the Grand Saline Police Department obtained a buccal swab from Appellant. Stacy McDonald, deputy chief of physical evidence at SWIFS and a DNA analyst, testified that she compared the external and vaginal samples from J.H.'s SANE examination with the buccal swab obtained from Appellant and concluded that Appellant was a possible contributor to the external and vaginal samples Sims obtained from J.H. Specifically, McDonald testified that the profile included "Donald Ellis or anybody in his paternal line."

Over defense counsel's objection that the potential prejudice to Appellant from her testimony outweighed any probative value, Jailey Chitty, who explained that she has known Appellant all her life, testified that a few hours before the offense, she had an unusual conversation with Appellant. During the conversation, Appellant asked Chitty what size bra she wore, what type of panties she wore, and if she shaved, and he asked her to get into his vehicle.[3] Chitty testified that when she got into Appellant's vehicle, he began discussing her body and "groped" her leg, near her sexual organ. Chitty ultimately ended the conversation and exited the vehicle.

The jury assessed Appellant's punishment at imprisonment for life. This appeal followed.

### ADMISSIBILITY OF EVIDENCE

In his sole issue, Appellant challenges (1) the admission of the video of J.H. because he did not have an opportunity to cross-examine her and (2) the admission of Barajas's testimony regarding Appellant evading arrest.

### Standards of Review and Applicable Law

Ordinarily, we review a trial court's ruling as to the admissibility of evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Manuel v.*

---

[3] The trial judge found that Chitty's testimony was admissible to prove Appellant's motive or intent and determined that its probative value outweighed any prejudice to Appellant. In his initial statement of the issue in his brief, Appellant states that the trial court erred by admitting "multiple types of non-relevant evidence[,]" and Appellant mentions Chitty's testimony in his statement of facts. However, in the remainder of his brief, Appellant does not argue that the admission of Chitty's testimony violated Rule 404(b), provide argument regarding Chitty's testimony, or otherwise challenge said evidence. Accordingly, we will not address the admissibility of Chitty's testimony. *See* TEX. R. APP. P. 38.1(i).

***State***, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. ***State v. Hill***, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016). If the trial court's ruling is within the zone of reasonable disagreement, we will not disturb it. ***Manuel***, 357 S.W.3d at 74. The erroneous admission of evidence does not affect substantial rights if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but slight effect. ***Solomon v. State***, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Although we defer to the trial court's determination of historical facts and credibility, we review its constitutional legal rulings de novo. ***Wall v. State***, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); ***Watson v. State***, 421 S.W.3d 186, 195 (Tex. App.—San Antonio 2013, pet. ref'd).

The Sixth Amendment's Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial unless (1) the witness is unavailable and (2) the defendant had a prior opportunity to cross-examine the witness. ***Crawford v. Washington***, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177 (2004); *see* U.S. CONST. amend. VI (providing that accused in criminal prosecution has right "to be confronted with the witnesses against him"). The purpose of the Confrontation Clause is to secure the opportunity for cross-examination, which is the primary means for testing the credibility of a witness and the truth of her testimony. ***Johnson v. State***, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016). "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." ***Woodall v. State***, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011).

When an alleged error implicates the Confrontation Clause, a constitutional harm analysis is required. ***Langham v. State***, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). Therefore, if an appellate court concludes that constitutional error occurred, it must reverse unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a). In determining whether an alleged error in admitting evidence in violation of ***Crawford*** is harmless beyond a reasonable doubt, we consider (1) the importance of the evidence to the State's case; (2) whether the evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the State's case. ***Langham***, 305 S.W.3d at 582; ***Scott v. State***, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). We may also consider the nature of the error, the extent to which the error was emphasized by the State, probable implications of the error, and the weight

that the jury would likely place on the error. ***Snowden v. State***, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). "[A] reviewing court must be convinced, beyond a reasonable doubt, that the admission of ***Crawford***-barred testimony would probably not have had a significant impact on the mind of an average juror." ***Davis v. State***, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006). In other words, an appellate court must determine whether there is "a reasonable possibility that the ***Crawford*** error, within the context of the entire trial, 'moved the jury from a state of non-persuasion to one of persuasion' on a particular issue[.]" ***Id***. at 852-53 (quoting ***Wesbrook v. State***, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)).

**Analysis**

As discussed above, Appellant contends the trial court erred by (1) admitting Crawford's body cam video of J.H. because it violated his right to confront witnesses against him, and (2) admitting Barajas's extraneous-offense testimony regarding Appellant evading arrest. For the reasons explained herein, we reject both of Appellant's arguments.

We first address Appellant's contention that admission of the body camera footage from an interview of the victim violated his rights under the Confrontation Clause. Assuming, without deciding, that the video was testimonial and its admission into evidence violated the Confrontation Clause, we will perform a constitutional harm analysis. *See* TEX. R. APP. P. 44.2(a); ***Langham***, 305 S.W.3d at 582. In doing so, we consider (1) the importance of the evidence to the State's case; (2) whether the evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the State's case. *See* ***Langham***, 305 S.W.3d at 582; ***Scott***, 227 S.W.3d at 690.

After the video was admitted into evidence and published to the jury, the only additional questions asked of Crawford sought his identification of J.H. as the person depicted on the video and asked him the date the video was made because the date and time that appear on the video are incorrect. Crawford's testimony then concluded. No other witness testified regarding the video. The State's case against Appellant included eyewitness testimony from R.E., as well as (1) R.E.'s testimony regarding J.H.'s intellectual disability; (2) Barajas's body camera footage that showed J.H.'s appearance, demeanor, and manner of speaking, including her responses to Barajas's questions; (3) Andrews's testimony regarding the nature and degree of J.H.'s intellectual disability; (4) Sims's testimony regarding her SANE examination of J.H. and J.H.'s statements to her about the offense; and (5) testimony from forensic scientists that Appellant could not be

6

excluded as a contributor to DNA recovered from inside J.H.'s sexual organ. We conclude that the State's case against Appellant was strong. *See **Langham***, 305 S.W.3d at 582; ***Scott***, 227 S.W.3d at 690. Additionally, we conclude that the video was somewhat cumulative of other evidence, such as the testimony of R.E. and Andrews, and was corroborated by said evidence regarding J.H.'s intellectual disability. We further conclude that the video was relatively unimportant to the State's case. *See **Langham***, 305 S.W.3d at 582; ***Scott***, 227 S.W.3d at 690.

After defense counsel's closing argument, the prosecutor mentioned the video during rebuttal and asked the jury of J.H.'s appearance, demeanor, and intellectual disability as shown in the video. *See **Snowden***, 353 S.W.3d at 822. Given the testimony of R.E. and Andrews regarding J.H.'s intellectual disability, as well as the jury's opportunity to observe J.H. on Barajas's body camera footage, we determine beyond a reasonable doubt that any error in admitting the complained-of video of J.H. did not contribute to Appellant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). We are convinced, beyond a reasonable doubt, that the complained-of evidence probably did not have a significant impact on the mind of the average juror or move the jury from being unpersuaded to persuaded. *See **Davis***, 203 S.W.3d at 852-53.

We now turn to Appellant's argument that the trial court erred by admitting Barajas's testimony regarding Appellant evading arrest. We review the trial court's decision to admit extraneous-offense evidence for abuse of discretion, and we will not disturb its ruling if it was within the zone of reasonable disagreement. ***De La Paz v. State***, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009); ***Henley***, 493 S.W.3d at 82-83; ***Montgomery***, 810 S.W.2d at 391; ***Manuel***, 357 S.W.3d at 74. We also give deference to a trial court's ruling on the balance between the probative value of the evidence and the danger of unfair prejudice. ***De La Paz***, 279 S.W.3d at 343; *see* TEX. R. EVID. 403.

"Relevant evidence" means evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Irrelevant evidence is inadmissible. TEX. R. EVID. 402. A trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However,

7

such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. R. 404(b)(2). The list of purposes for which an extraneous offense may be admitted under Rule 404(b) is neither exhaustive nor exclusive. *De La Paz*, 279 S.W.3d at 343; *Montgomery*, 810 S.W.2d at 388. When a trial court determines that extraneous offense evidence is admissible under Rule 404(b) and the opponent of the evidence objects to the evidence, the trial court must weigh the probative value of the evidence against its potential for unfair prejudice. *Montgomery*, 810 S.W.2d at 389; *see* TEX. R. EVID. 403.

On this record, the trial court could reasonably conclude that Barajas's testimony regarding Appellant evading arrest was admissible to show Appellant's knowledge of his guilt. *See* TEX. R. EVID. 404(b)(2). Therefore, we conclude that the trial court did not abuse its discretion by admitting the complained-of testimony. *See Henley*, 493 S.W.3d at 82-83; *Manuel*, 357 S.W.3d at 74. Moreover, a party must either object each time the allegedly inadmissible evidence is offered and obtain a ruling or obtain a running objection, and improper admission of testimony is harmless when the same or similar evidence is admitted elsewhere without objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Leday v. State*, 983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998); *Flores v. State*, 513 S.W.3d 146, 165 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Before Barajas testified that Appellant evaded arrest and officers used a taser to subdue him for arrest, R.E. testified that Appellant fled the house naked after the offense and that officers tasered him during his arrest. Because testimony that Appellant evaded arrest was admitted without objection during R.E.'s testimony, we conclude that any alleged error in admitting Barajas's testimony was harmless. *See Valle*, 109 S.W.3d at 509; *Leday*, 983 S.W.2d at 717-18; *Flores*, 513 S.W.3d at 165. Furthermore, even if the admission of the complained-of testimony constituted an abuse of discretion, we have fair assurance that the testimony did not influence the jury or had but slight effect. *See* TEX. R. APP. P. 44.2(b) (providing that non-constitutional error "that does not affect substantial rights must be disregarded"); *Solomon*, 49 S.W.3d at 365; *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (holding that "[a] substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."). For all of these reasons, we overrule issue one.

## <u>DISPOSITION</u>

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

<u>GREG NEELEY</u>
Justice

Opinion delivered May 31, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2024**

**NO. 12-23-00272-CR**

**DONALD BRIAN ELLIS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. CR19-00305)

THIS CAUSE came to be heard on the appellate record and brief filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*